**AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT**

I, Heather Campbell, being duly sworn, declare and state as follows:

**I.  INTRODUCTORY INFORMATION**

1.   I am a duly appointed Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), and have been so since September 1999.  I spent approximately fifteen years investigating white collar crime matters and was the case agent for investment fraud, mail fraud, wire fraud, mortgage fraud, and real estate fraud cases.  I am currently assigned full time to the Los Angeles Division, Asset Forfeiture Squad.  I have participated in many aspects of criminal investigations, including collecting and reviewing evidence, conducting physical surveillance, interviewing witnesses, victims, and subjects who had personal knowledge regarding the investigations in which I have been involved, and the preparation and execution of search, seizure, and arrest warrants.  As an SA, I am responsible for enforcing federal criminal statutes over which the FBI has investigative jurisdiction, including wire fraud, bank fraud, and money laundering.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, documents and records that were collected and reviewed in the course of this investigation, information that was obtained from interviewed witnesses, and information gathered by FBI SA Justin Palmerton, as well as other law enforcement officers.  This affidavit is intended to show merely that there is sufficient

1

probable cause for the requested warrants and does not purport
to set forth all of my knowledge of or investigation into this
matter.  Unless specifically indicated otherwise, all
conversations and statements described in this affidavit are
related in substance and in part only.

## II. PURPOSE OF AFFIDAVIT

3.   This affidavit is made in support of application for a
warrant to seize up to $149,900 in Bank of America account
number 325113647695, held in the name of Allstate Towing &
Transport LLC ("SUBJECT ACCOUNT").

4.   The funds in the SUBJECT ACCOUNT (the "SUBJECT FUNDS")
are subject to seizure and forfeiture pursuant to 18 U.S.C.
§ 981(a)(1)(C) and (b) because there is probable cause to
believe that said funds constitute or were derived from proceeds
traceable to one or more violations of 18 U.S.C. § 1343 (Wire
Fraud) and 18 U.S.C. § 1344 (Bank Fraud), both of which are
specified unlawful activities as defined in 18 U.S.C.
§ 1956(c)(7).  Specifically, probable cause exists that the
SUBJECT FUNDS represent proceeds from a fraud scheme by which
RICHARD AYVAZYAN ("R. AYVAZYAN"), MARIETTA TERABELIAN
("TERABELIAN"), Arthur AYVAZYAN ("A. AYVAZYAN"), TAMARA DADYAN
("DADYAN") and others known and unknown, knowingly submitted or
caused others to submit fraudulent loan applications to various
lenders, including federally insured financial institutions, and
the Small Business Administration ("SBA"), in an attempt to
obtain funds authorized by the Coronavirus Aid, Relief, and
Economic Security ("CARES") Act.  Based on these fraudulent loan

2

applications, funds were then wired to numerous accounts associated with R. AYVAZYAN, TERABELIAN, and A. AYVAZYAN, including SUBJECT ACCOUNT 1.

5.    To the extent that the SUBJECT FUNDS are not the actual monies traceable to or involved in the illegal activities identified herein, there is probable cause to believe that said funds are identical property found in the same account as the property involved in the illegal activities, rendering them funds subject to forfeiture pursuant to 18 U.S.C. § 984.

6.    In addition, the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(7) and (b)(1), and 21 U.S.C. § 853(f), because there is probable cause to believe that the SUBJECT FUNDS would, in the event of conviction on the alleged underlying wire fraud and bank fraud offenses, be subject to forfeiture, and an order under 21 U.S.C. § 853(e)(providing for restraining orders and injunctions) would not be sufficient to assure the availability of the property for forfeiture.

### III.  BACKGROUND

7.    Based on my training and experience, review of publicly available information, and discussions with other law enforcement agents, I have learned the following regarding the CARES Act, PPP loans, and EIDL loans.

**The Paycheck Protection Program ("PPP")**

8.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the

millions of Americans who are suffering the economic effects
caused by the COVID-19 pandemic.  One source of relief provided
by the CARES Act was the authorization of up to $349 billion in
forgivable loans to small businesses for job retention and
certain other expenses, through a program referred to as the
PPP.  In or around April 2020, Congress authorized over $300
billion in additional PPP funding.

      9.   In order to obtain a PPP loan, a qualifying business
must submit a PPP loan application, signed by an authorized
representative of the business.  The PPP loan application
requires the business (through its authorized representative) to
acknowledge the program rules and make certain affirmative
certifications in order to be eligible to obtain the PPP loan.
In the PPP loan application, the small business (through its
authorized representative) must state, among other things, its:
(a) average monthly payroll expenses; and (b) number of
employees.  These figures are used to calculate the amount of
money the small business is eligible to receive under the PPP.
In addition, businesses applying for a PPP loan must provide
documentation showing their payroll expenses.

      10.  A PPP loan application must be processed by a
participating lender.  Data from the application, including
information about the borrower, the total amount of the loan,
and the listed number of employees, is transmitted by the lender
to the SBA in the course of processing the loan.  Specifically,
the lenders enter the PPP application information into the SBA
E-Tran system.  The E-Tran computer server is located in

Herndon, Virginia.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA.  The SBA is a United States government agency based in Washington, D.C.

11.  PPP loan proceeds must be used by the business on certain permissible expenses, e.g., payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

**The Economic Injury Disaster Loan ("EIDL") Program**

12.  The EIDL program is a Small Business Administration ("SBA") program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

13.  The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance is determined by the number of employees the applicant certifies having.  The advances do not have to be repaid.

14.  In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide

information about its operations, such as the number of
employees, gross revenues for the 12-month period preceding the
disaster, and cost of goods sold in the 12-month period
preceding the disaster.  In the case of EIDLs for COVID-19
relief, the 12-month period was that preceding January 31, 2020.
The applicant must also certify that all of the information in
the application is true and correct to the best of the
applicant's knowledge.

15.  EIDL applications are submitted directly to the SBA
and processed by the agency with support from a government
contractor.  The amount of the loan, if the application is
approved, is determined based, in part, on the information
provided by the application about employment, revenue, and cost
of goods, as described above.  Any funds issued under an EIDL or
advance are issued directly by the SBA.  EIDL funds can be used
for payroll expenses, sick leave, production costs, and business
obligations, such as debts, rent, and mortgage payments.  If the
applicant also obtains a loan under the PPP, the EIDL funds
cannot be used for the same purpose as the PPP funds.

## IV. FACTS SUPPORTING PROBABLE CAUSE FOR SEIZURE

### Summary of Scheme

16.  Beginning in or around March 2020 and continuing
through at least in or around July 2020, R. AYVAZYAN,
TERABELIAN, A. AYVAZYAN, DADYAN and others known and unknown,
knowingly submitted or caused others to submit fraudulent loan
applications in the names of numerous business entities to
various lenders, including federally insured financial

institutions, and the Small Business Administration ("SBA"), and in turn, received proceeds from disaster loans authorized by the CARES Act.  Among other things, the fraudulent loan applications included material misrepresentations about the applicant's payroll, payroll taxes, number of employees, and income.  In some instances, stolen and/or fake identities were used.  Once the funds were received, in some instances, disaster loan proceeds were used to purchase residential properties.  Using disaster loan proceeds as part of a down payment on a residence for an individual's personal benefit is also fraudulent and violates the requirements for the PPP and EIDL.

**Fraudulent loan application in the name of Timeline Tranport, Inc. ("Timeline Transport")**

17.  As described in the criminal complaint and supporting affidavit, which was sworn and signed on October 20, 2020, in United States v. Ayvazyan et al, No. 2:20-MJ-5081 ("Complaint 1"), there is probable cause to believe that R. AYVAZYAN and TERABELIAN together, and with others known and unknown, knowingly combined, conspired, confederated, and agreed to submit, and caused to be submitted, fraudulent loan applications to various financial institutions and the SBA, seeking funds through the PPP and EIDL programs, and improperly used those funds for their own personal benefit rather than for the business expenses for which the loan applications certified they would be used, in violation of 18 U.S.C. § 1349 (Conspiracy to Commit Wire and Bank Fraud).  Complaint 1, attached hereto as Exhibit 1, is incorporated by reference herein.

18.   As described in Complaint 1 at paragraphs 16 through 23, on or about June 15, 2020, a fraudulent loan application in the business name Timeline Transport was submitted to the SBA for an EIDL loan in the amount of $150,000.  It appears to have been submitted by R. Ayvazyan, using a fake, synthetic ID.  The loan was approved and proceeds of this loan were used toward the purchase of a residence located at 4910 Topeka Drive, Tarzana, CA ("4910 Topeka").

19.   As described in Complaint 1 at paragraphs 22 and 23, the purchase price of 4910 Topeka was $3,250,000 and it was purchased in the names of R. AYVAZYAN and TERABELIAN.

**Fraudulent loan applications in the names of G&A Diamonds and Redline Auto Collision**

20.   As described in Complaint 1 at paragraphs 24 through 26, on or about May 3, 2020 an individual applied for and shortly thereafter received a PPP loan in the amount of $113,750 on behalf of G&A Diamonds, and on or about April 8, 2020, an individual applied for and shortly thereafter received an EIDL loan in the amount of $145,000 on behalf of G&A Diamonds. G&A Diamonds did not use the PPP and EIDL funds to pay employees. Proceeds of these loans were transferred to an account of TERABELIAN and were used toward the purchase of 4910 Topeka.

21.   Also described in Complaint 1 at paragraphs 24 through 26, on or about June 2, 2020, an individual applied for and shortly thereafter received an EIDL loan in the amount of $150,000 on behalf of Redline Auto Collision.  Redline Auto Collision did not use the EIDL loan to pay employees but instead

8

wired $150,000 to TERABELIAN's account which was used to purchase 4910 Topeka.

**Allstate Towing Fraudulent Loan Application 1**

22.  As described in a complaint and supporting affidavit, which was sworn and signed on November 3, 2020, in <u>United States v. A. Ayvazyan and DADYTAN</u>, No. 2:20-MJ-5321 ("Complaint 2"), there also is probable cause to believe that Arthur AYVAZYAN ("A. AYVAZYAN") and TAMARA DADYAN ("DADYAN") together with others known and unknown, conspired to commit wire fraud and bank fraud by submitting or causing others to submit false and fictitious documents in support of PPP and EIDLE loan applications.  As further described in paragraph 5 of Complaint 2, the government's investigation has revealed that, A. AYVAZYAN and DADYAN are married, R. AYVANZAN and TERABELIAN are married, and that A. AYVAZYAN and R. AYVAZYAN are bothers.  A. AYVAZYAN and DADYAN fraudulently applied for and received numerous PPP and EIDL loans conspired and conspired with R. AYVAZYAN and TERABELIAN in doing so.  One of the fraudulent loans described in paragraphs 15 through 24 of Complaint 2 was obtained from Lender 1, which I know to be Cross River Bank, in the name of Allstate Towing and Transport LLC ("Allstate Towing") and was in the amount of $124,000.  Complaint 2, attached hereto as Exhibit 2, is incorporated by reference herein.

23.  According to paragraphs 19 and 20 of Complaint 2 at EXHIBIT 2, the government's investigation has revealed that Allstate Towing's application for a PPP loan to Cross River Bank

contained materially false and misleading information.  For example:

   a.   The IRS forms 940 and 941 that A. AYVAZYAN submitted with the Allstate Towing PPP application appear to be fraudulent.  The IRS confirmed that these returns were not filed with the IRS.  In fact, Allstate Towing had not filed employment tax or federal income tax returns with the IRS in 2019 or 2020.

   b.   Allstate Towing also represented on the PPP application to Cross River Bank that it employed 11 individuals.  Investigators reviewed records provided by CA EDD and learned that there were no records of Allstate Towing having any employees for the period January 2019 to October 5, 2020.

24.  Additional review of the Cross River Bank loan documents indicated that that this loan was applied for on May 2, 2020, and the funds were distributed to a bank account at US Bank, account ending 5135.  Included in the loan documents was a document titled, "Paycheck Protection Program, Borrower Application form".  This form was signed by A. AYVAZYAN as the Director of Allstate Towing and 100% owner of the company, which was located at 14952 Cobalt Street, Los Angeles, CA.  The form included the following certification which was initialed off by A. Ayvazyan:

> The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are

knowingly used for unauthorized purposes, the
federal government may hold me legally liable,
such as for charges of fraud.

25.   Investigators obtained records from US Bank for an
account in the name of A. AYVAZYAN ending x5135 ("USB A.
Ayvazyan x5135").  These records showed that on May 5, 2020, a
wire came into the account in the amount of $124,000 for an SBA
Loan, which I believe were the funds from the Cross River Bank
PPP loan.  The account had a balance of $3,905.33 as of May 4,
2020.  An additional $1,505.00 was deposited into the account
from other sources before on May 21, 2020, when USB A. Ayvazyan
x5135 wired $80,000.00 to SUBJECT ACCOUNT 1.  SUBJECT ACCOUNT 1
was opened on May 11, 2020 with a zero balance, received the
$80,000 deposit on May 21, 2020, and three other deposits
totaling $14,800 on or before June 3, 2020, at which time the
account sent a wire in the amount of $93,000 to Encore Title.

26.   Encore Title documents were obtained and reviewed.
These records showed that the $93,000 wire was for the purchase
of a residence located at 4910 Topeka Drive, Tarzana, CA 91356,
purchased in the name of R. Ayvazyan and TERABELIAN for
$3,250,000.  I believe at least $72,789.67 in funds of the
$93,000 wire used to purchase the residence came from the
proceeds of the Cross River Bank funded PPP loan [$93,000 wire
minus the funds in USB A. Ayvazyan x5135 and SUBJECT ACCOUNT 1
from other sources at the time the relevant transfers were made/
or $93,000 - $3,905.33 - 1,505.00 - 14,800 = $72,789.67].  Using
the funds to purchase a residence is an unauthorized use of the
funds.

**Allstate Towing Fraudulent Loan Application 2 – Funds deposited into SUBJECT ACCOUNT**

27. AS described in paragraphs 25-27 of Complaint 2, investigators identified and obtained a loan file for an SBA EIDL loan obtained by Allstate Towing.  These records showed that on or about June 24, 2020 Allstate Towing applied for an SBA EIDL loan in the amount of $150,000, which was approved on July 7, 2020, and funded on or about July 9, 2020.  SUBJECT ACCOUNT was the only bank account noted in the loan file as being tied to the loan applicant.

28. Investigators determined the loan application contained materially false and misleading information, including:

　　a.　On the SBA Application submitted for Allstate Towing the entity was listed as All State Towing & Transport 1, the entity type was listed as a sole Proprietorship, the EIN provided was XX-XXX6489, gross revenues were listed as $589,000 for the 12 months leading up to the disaster, and the address provided was 17450 Weddington Street, Encino, CA. The EIN provided is the same number as A. AYVAZYAN's social security number. I know that businesses with employees are required to have an EIN on file with the IRS.  The address is a residential address and is different than the business address listed on the application for the PPP loan received in May.

　　b.　I know from looking at the California Department of Corporations business registration records for Allstate

Towing, that Allstate Towing was registered on or about July 30, 2019, in the state of California as an LLC with A. AYVAZYAN as the sole manager of the company.  I know from looking at the bank records for SUBJECT ACCOUNT, where the loan funds were sent, that the bank account and the supporting documents for the bank account were for Allstate Towing and Transport LLC.  I believe A. AVAZYAN fraudulently changed the type of entity he had, the specific name of the entity, the tax ID number, and the address for Allstate Towing, on the SBA Application, in order to mask the fact that Allstate Towing had previously received a fraudulent PPP Loan.

   c. Allstate Towing also represented on the SBA EIDL application to SBA that it employed 12 individuals. Investigators reviewed records provided by CA EDD and learned that there were no records of Allstate Towing having any employees for the period January 2019 to October 5, 2020.

  29. Investigators reviewed bank records obtained from Bank of America for SUBJECT ACCOUNT.  These records showed that the account was opened on May 9, 2020 in the name of Allstate Towing & Transport LLC, using the EIN of 84-2591201.  A. Ayvazyan was listed as the company's "One Manager" and was the sole signer on the account.  On July 13, 2020, the account received a wire in the amount of $149,900 from the SBA.  As of September 30, 2020, this account had a balance of $162,283.51.

## V.  <u>**CONCLUSION**</u>

30.   The evidence set out in this affidavit demonstrates that there is probable cause to believe that during the time period May 2020 through July 2020, Allstate Towing submitted fraudulent loan applications to Cross River Bank and the SBA, in an attempt to obtain funds authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.  Based on the fraudulent loan application submitted to the SBA, $149,900 was wired directly to SUBJECT ACCOUNT 1 on July 13, 2020.

31.   Based on the foregoing, there is probable cause to believe that SUBJECT FUNDS constitute or were derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (Wire Fraud)and 18 U.S.C. § 1344 (Bank Fraud), and are therefore subject to seizure pursuant to 18 U.S.C. § 981(b), and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 984.  In addition, there is probable cause to

believe that the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(7) and 21 U.S.C. 853(f), because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.


_____
HEATHER CAMPBELL
Special Agent
FEDERAL BUREAU OF
INVESTIGATION


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
November, 2020.


_____
HONORABLE ALICIA ROSENBERG
UNITED STATES MAGISTRATE JUDGE